**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ROGER TATE, ) | |
| ) | CASE NO.  1:11-cv-02041 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **REPORT & RECOMMENDATION** |
| ) | |
| Defendant. ) | |

Plaintiff Roger Tate ("Tate") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Tate's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be AFFIRMED.

**I. Procedural History**

On March 17, 2009, Tate filed an application for POD, DIB, and SSI alleging a disability onset date of May 29, 2004. His application was denied both initially and upon reconsideration. Tate timely requested an administrative hearing.

On December 6, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Tate, represented by counsel, testified. Ted S. Macy testified as an impartial vocational expert ("VE"). On December 22, 2010, the ALJ found Tate was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision

became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age forty-five at the time of his administrative hearing, Tate is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).  Tate has a high school diploma and past relevant work as a maintenance worker.

*Hearing Testimony*

At the hearing, Tate testified as follows:

- He is 5'11" tall and weighs 244 pounds.  (Tr. 39.)

- He is married and has two minor children.  (Tr. 39.)  His wife takes care of the children and works full-time.  (Tr. 40.)  His brother-in-law watches the two-year old when his wife is away at work.  (Tr. 54.)

- He can drive short distances, but his doctors discourage it because he has fallen asleep while driving.  (Tr. 41.)

- He completed the twelfth grade.  (Tr. 42.)

- He last worked in 2004 when he was laid off.  (Tr. 42.)

- The main problems that prevent him from working are back pain, breathing issues, and headaches.  (Tr. 43.)  His problems began in 2002.  (Tr. 44.)

- He experiences back pain daily, which he rated an eight to ten on a ten point scale.  His headaches cause pain in the six to eight range on a ten point scale.  (Tr. 44.)  The pain is sharp and shoots down his legs.  (Tr. 48.)

- He takes pain medication for his back, but it does not help.  His doctors recently increased his dosage.  (Tr. 45-46.)

- His doctors have discussed surgery with him, but they indicated that it was a last option.  (Tr. 46.)

- He receives medical treatment "almost every week."  (Tr. 48.)

- He uses a cane and occasionally a walker, but does not want to be seen in public with the latter.  Neither the cane nor the walker were prescribed by a physician.  (Tr. 49.)

- When his pain is a ten, he cannot make it out of bed to get to the bathroom.  (Tr. 49-50.)

- He was told not to lift more than five pounds.  (Tr. 50.)

- He has no problem using his upper extremities.  (Tr. 52.)

- He has "big problems" using stairs. (Tr. 52.)

- Since 2007, a normal day for him involves cleaning his sleep apnea machine after waking up around 7 a.m., showering, and then checking his blood pressure. He hooks his back up to a TENS unit and watches television. (Tr. 52-53.)

- His only activity outside the house was singing in a gospel group two to three times per week, but he stopped in March of 2010 after fainting twice at rehearsal. (Tr. 53-55.)

- He is able to take care of his personal hygiene. (Tr. 59.)

- He has been taking medication for high blood pressure since 2006. (Tr. 59.) Though he has consistently taken the medication, which his doctors have increased, his blood pressure has remained the same. (Tr. 60-61.)

- He has been experiencing difficulty staying focused for about a year. (Tr. 63.)

- Neither physical therapy nor pain injections relived his symptoms, even temporarily. (Tr. 65.) His pain medications do not help either. (Tr. 67.)

- He has arthritis in his knee. He purchased a soft knee brace at the drug store. (Tr. 72.)

The VE classified Tate's past relevant work as that of a maintenance worker, which was medium exertional work both as described by Tate and as classified in the Dictionary of Occupational Titles ("DOT"). (Tr. 74.) The skills associated with that work were not transferable to the light level. (Tr. 75.) The ALJ asked if a hypothetical person with Tate's age, education, and work experience, who could perform medium exertional work, could perform Tate's past relevant work. (Tr. 75.) The VE responded affirmatively. *Id*. The VE also gave other examples of jobs such an individual could perform: laundry worker, bench assembler, final assembler. (Tr. 75-76.)

The ALJ posed a second hypothetical to the VE, limiting the individual to light exertional work performing only simple, routine, or repetitive tasks. (Tr. 76.) The VE testified that such an individual could not perform Tate's past work, but could perform the previously identified bench assembler and final assembler jobs, as well as the job of a wire worker. (Tr. 76-77.) The ALJ posed a third hypothetical to the VE, limiting the individual to sedentary work performing only simple, routine, or repetitive tasks. (Tr. 77.) Again, the VE testified that such an individual could not perform Tate's past work, but could perform the previously identified final assembler job, and the bench assembler and wire worker jobs in reduced numbers. *Id*. If Tate's testimony

was fully credited, the VE stated that he would be unemployable. (Tr. 78.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Tate was insured on his alleged disability onset date, May 29, 2004 and remained insured through December 31, 2009. (Tr. 16, 18.) Therefore, in order to be entitled to POD and DIB, Tate must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

### IV.  Summary of Commissioner's Decision

The ALJ found Tate established a medically determinable, severe impairments, due to back pain, high blood pressure, obstructive sleep apnea, and breathing problems.  (Tr. 18.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 19.)  Tate was found capable of performing his past relevant work as a maintenance worker, and was determined to have a Residual Functional Capacity ("RFC") for the full range of medium work.  (Tr. 19, 23.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Tate is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision.");  *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

### *Treating Physician*

Tate argues that the ALJ failed to fully and fairly evaluate the medical evidence of record and failed to follow the treating physician rule. (ECF No. 16 at 12-15.) Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in

20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984).

Tate asserts that the ALJ failed to give good reasons for rejecting the opinion of his treating physician, Anuj Daftari, M.D., contained in a physical functional capacity assessment completed after Tate's last examination on November 19, 2010. (ECF No. 16 at 14-15, *citing* Tr. 410.) Dr. Daftari opined that, in an 8-hour workday, Tate could stand/walk for 1 to 2 hours (0.5 to 1 hour without interruption) and that he could sit for one to two hours (0.5 to 1 hour without interruption). (Tr. 410.) Dr. Daftari further opined that lifting/carrying were affected and Tate could lift no more than five pounds frequently. *Id*. Tate was also found to have marked limitations in pushing/pulling and bending, but was only moderately limited in his ability to perform repetitive foot movements. *Id*. While opining that Tate, at the time of examination, was "unemployable," Dr. Daftari noted that Tate's condition was only expected to last 30 days to

---

[2] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

nine months. *Id*.

> The ALJ ascribed little weight to Dr. Daftari's opinion, explaining as follows:
>
> I considered Dr. Daftari's opinion, and I have accorded it little weight in my analysis as it is contrary to the evidence of record. By March 2010, the claimant was practicing lifting 15-, 25-, and 30-pound boxes, and using a pallet jack at physical therapy. (Exhibit 9F/13) These activities required the ability to lift, and to use one's foot repetitively in excess of the limitations Dr. Daftari described. The record does not reflect statements that the claimant had difficulty standing and walking other than those briefly mentioned in physical therapy when the claimant used a cane or walker only when he strained too hard in therapy. (Exhibit 8F/11) He otherwise had a normal and independent gait. (Exhibit 8F/11) Dr. Daftari's opinion that the claimant was unemployable is essentially an opinion that the claimant is unable to work. Dr. Daftari's opinion was on an issue reserved to the Commissioner, and was not accorded weight in my analysis. However, Dr,. Daftari's opinion that the claimant's limitations were expected to last between 30 days and 9 months is not inconsistent with my finding that the claimant is not disabled.

(Tr. 22.)

First, according to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982). The ALJ did not err by failing to lend any special weight to Dr. Daftari's opinion that Tate was unemployable. *See, e.g., Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) ("[20 C.F.R. § 404.1527(e)(3)] further elaborates that no 'special significance' will be given to opinions of disability, even if they come from a treating physician."); *Plickert v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 49994 at *19 (N.D. Ohio, Apr. 10, 2012) ("[A] conclusion [that] Plaintiff is disabled, ... is not entitled to any special weight; the ultimate disability finding is one reserved to the Commissioner."); *Steckroth v. Astrue*, 2012 U.S. Dist. LEXIS 45715 at *33 (E.D. Mich. Mar. 2, 2012) ("An ALJ is not required to give any special weight to a treating source's conclusion that a claimant is disabled, however, as this conclusion is reserved to the Commissioner alone, based on all the evidence of

record.")

Furthermore, while the ALJ did not give any weight to Dr. Daftari's conclusion that Tate was unemployable, she specifically addressed the underlying functional limitations contained in Dr. Daftari's assessment. The Court finds that the ALJ identified legally sufficient reasons for discounting the functional limitations Dr. Daftari ascribed to Tate. While the ALJ did not expressly consider the length of Dr. Daftari's treating relationship and frequency of examination with Tate, those factors do not appear to operate in Tate's favor.[3] The ALJ did, however, discuss the lack of consistency or supportability of Dr. Daftari's opinion in light of the record as a whole. (Tr. 22.) The ALJ expressly noted the complete dearth of medical evidence, save for Tate's own subjective complaints, supporting the walking, standing, or sitting limitations found by Dr. Daftari and the fact that no physician actually prescribed the assistive devices Tate used. The ALJ also explained why she found Tate's physical therapy records undermined the lifting and repetitive foot movement restrictions found by Dr. Daftari. Though Tate asserts that an MRI taken of his lumbar spine in September of 2010 supports said restrictions, it is unclear whether the results of that test, which document mild to moderate findings, support Dr. Daftari's level of restriction. (Tr. 525.) Though Tate offers his own interpretation of the MRI, it is not this Court's function to reevaluate the evidence.

Therefore, it is recommended that Tate's first assignment of error be denied.

***Credibility***

Tate also asserts that the ALJ failed to conduct a proper credibility analysis. (ECF No. 16 at 16-17.) It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step analysis. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ

---

[3] Notably, nowhere in his brief does Tate identify any treatment records from Dr. Daftari, other than the physical capacity assessment, suggestive of a long-standing treating relationship.

"must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Commissioner must examine whether (2)(a) the objective medical evidence confirms the alleged severity of pain, *or* (2)(b) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The ALJ found that Tate suffered from medically determinable impairments that "could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 20.) However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [her RFC] assessment." (Tr. 23.) Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.") To determine credibility, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. *See* SSR 96-7p. Beyond medical evidence, there are seven factors that the ALJ should consider. The seven factors are: (1) the individual's daily activities; (2) the location,

duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F. Supp. 2d at 732.

> The ALJ explained the reasons for not finding Tate fully credible as follows:
>
> The claimant's reported daily activities as recorded in testimony reveals an individual who successfully engages in a variety of activities inconsistent with the limitations described. He complained of back pain, but he independently managed his personal care needs. He also alleged that he needed to use a cane and used a walker in the past, but neither of these assistive devices was prescribed for him. In addition, physical therapy notes chronicled the claimant lifting as much as 30 pounds of weight. This is inconsistent with disabling back pain.
>
> ***
>
> The claimant also complained of headaches and fainting, yet the record continuously reports non-compliance with the medication protocol required for his high blood pressure. When compliant, the claimant did not complain of these symptoms. The claimant alleged that he suffered from shortness of breath, but testified that he sang with a gospel group for up to 15 minutes at a time during a performance. Singing requires controlled breathing, and it is unlikely that the claimant could maintain this skill without being able to manage his alleged shortness of breath. Finally, the claimant's obstructive sleep apnea is well controlled with the CPAP machine. These inconsistencies between the claimant's stated limitations and his activities and the objective evidence are further support for my finding that the claimant can perform at the medium level of work.

(Tr. 23.)

The ALJ's credibility determination, which is entitled to considerable deference, comported with the requirements of SSR 96-7p. Among the seven factors listed, the ALJ specifically discussed some of Tates's daily activities, his capabilities during physical therapy, some of the non-pain medications used by Tate, and treatment (*i.e.* his unprescribed use of assistive devices) other than medication. An ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005); *Allen v. Astrue*, 2012 U.S. Dist. LEXIS 47590 (N.D. Ohio Apr. 4, 2012). Given the identified inconsistencies, the ALJ did not believe

11

Tate was particularly credible.  Though a discussion of the efficacy of Tate's pain medications would have been beneficial, the Court declines to find that the ALJ's pain assessment and credibility analysis were insufficient or procedurally improper.

### VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner should be AFFIRMED and judgment entered in favor of the defendant.

s/ Greg White<br>United States Magistrate Judge

Date: September 19, 2012

**OBJECTIONS**
Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981)**.  *See also Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986)**.